IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Dominic Johnson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 4064 |
| v. | ) | |
| | ) | Hon. Mary M. Rowland |
| C/O Ramos, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dominic Johnson brought this *pro se* civil rights complaint, 42 U.S.C. § 1983, concerning an incident at the Cook County Jail in March 2023 in which he alleges that his sink and toilet were broken for three weeks. Plaintiff alleges that Defendant, Deputy Sheriff Rito Ramos-Saldana, sued as "Officer Ramos," refused his request to put in a work order, allegedly in retaliation for prior lawsuits filed by Plaintiff. Before the Court is Defendant's motion for summary judgment [60]. Defendant argues: (1) Plaintiff's case should be dismissed with prejudice because he repeatedly and intentionally diverted assets to avoid paying filing fees; (2) Plaintiff failed to exhaust his administrative remedies prior to filing suit; and (3) Plaintiff has not brought forth evidence of unreasonable conduct on the part of Defendant Ramos-Saldana. For the reasons that follow, the motion is granted and the case will be dismissed with prejudice as a sanction for litigation misconduct because Plaintiff diverted assets to avoid paying filing fees.

## BACKGROUND

**A. Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the

time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). Specifically, a district court is not required to '"wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Id.* (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000)).

Because Plaintiff is proceeding *pro se*, Defendants served him with a Local Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment. (Dkt. No. 63.) Plaintiff filed a response to the motion consisting of a response of sorts to Ramos-Saldana's Declaration (rather than Defendant's factual statement, as required) (Dkt. No. 67 at pgs. 1-2) and a document titled "Plaintiff[']s facts to have the Judge Consider" (*id.* at pgs. 3-5.)

2

Because of the inadequacy of such responses by the Plaintiff, the Court accepts Defendants' factual statements as true unless otherwise noted. *Lamz*, 321 F.3d at 683. The Court will entertain Plaintiff's factual statements and responses only to the extent they are supported by the record, or to the extent he could properly testify himself about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013).

Nonetheless, Plaintiff's failure to strictly comply with Local Rule 56.1 is not a basis for automatically granting Defendant's motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). The Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court will apply these standards in evaluating the evidence.

### B. Relevant Facts[1]

At all relevant times, Plaintiff Dominic Johnson was an inmate at the Cook County Jail, and Defendant Deputy Sheriff Rito Ramos-Saldana, was an employee of the Cook County Sheriff's Office who worked as a correctional officer at the Cook County Jail. (*See* Def.'s SOF, Dkt. No. 62, at pg. 2.)

Plaintiff has filed eight lawsuits in this court that proceeded to screening under 28 U.S.C. § 1915A: *Johnson v. Dart*, No. 18-cv-8225; *Johnson v. CCSDOC Jail*, No. 19-cv-7631; *Johnson v. Dart*, No. 20-cv-2252; *Johnson v. Dart*, No. 21-cv-0432; *Johnson v. Dart*, No. 23-cv-1338; *Johnson v. Dart*, No. 23-cv-1339; the instant case, *Johnson v. Ramos*, No. 23-cv-4064; and *Johnson v. Johnson, et al.*, No. 23-cv-15683. (Def.'s SOF, Dkt. No. 62, at ¶ 3.)[2] This Court

---

[1] This Court has jurisdiction under 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred at the Cook County Jail, which is located in Cook County, within the Northern District of Illinois. (*See* Def.'s SOF, Dkt. No. 62, at pg. 2.)

[2] The Court administratively terminated a ninth case, *Johnson v. Mays*, No. 23-cv-2843, because the complaint was intended as an amended complaint in a previously filed case.

3

presided over each of these lawsuits and granted Plaintiff leave to proceed *in forma pauperis* in all eight cases. (*Id.* at ¶ 4.)

In granting Plaintiff leave to proceed in *forma pauperis* in his most recent case on Dec. 5, 2023, *see* Case No. 23-cv-15683, Dkt. No. 7, the Court observed that Plaintiff owed filing fees in whole or in part for the following cases: *Johnson v. Dart*, No. 18-cv-8225; *Johnson v. CCSDOC Jail*, No. 19-cv-7631; *Johnson v. Dart*, No. 20-cv-2252; *Johnson v. Dart*, No. 21-cv-0432; *Johnson v. Dart*, No. 23-cv-1338; *Johnson v. Dart*, No. 23-cv-1339; and the instant case. (*Id.* at ¶ 8.) Because of these outstanding filing fees, the Court ordered Plaintiff to pay (and the facility having custody of him to remit) to the Clerk of Court 100 percent of all deposits to Plaintiff's trust fund account each month that deposits exceeded $10 as long as the fees remained due, with 100 percent in boldface type. (*Id.* at ¶¶ 9-12.)[3]

Not long after the Court issued that *in forma pauperis* order, Plaintiff's cousin sent him $50.00 (*Id.* at ¶ 13.) Of that $50.00, $40.44 was applied to Plaintiff's first five cases. (*Id.* at ¶ 14.) Nothing was paid as to the other three. (*Id.* at ¶ 15.) Plaintiff knew that the money from his cousin went to his filing fees. (*Id.* at ¶ 16.) He knew that money he received in his trust fund account automatically would go toward the payment of filing fees. (*Id.* at ¶ 17.) Plaintiff understood how much of this money should go toward his filing fees and the implications for his personal finances. (*Id.* at ¶¶ 18-19.)

To avoid paying anything toward the cost of his lawsuits, Plaintiff "didn't have people sending money to [his] books." (*Id.* at ¶ 20.) He would have people send money to "a friend's book or whatever it was, whoever, you know." (*Id.* at ¶ 21.; *see* Pl.'s Dep. in Case No. 23-cv-15683, Dkt. No. 62-1, at 82:7-9.) Plaintiff said he did this "[s]o I could get around paying for the

---

[3] This order was consistent with *Bruce v. Samuels*, 577 U.S. 82, 89–90 (2016).

lawsuit basically, the lawsuit fee." (*See* Pl.'s Dep. in Case No. 23-cv-15683, Dkt. No. 62-1, at 82:10-12.)

Plaintiff explained that he would ask a friend to let one of his family members or girlfriends put money on their books, or send them a care package, and then Plaintiff would give them something out of the care package or the food he purchased at the commissary. (Def.'s SOF, Dkt. No. 62, at ¶ 22; *see* Pl.'s Dep. in Case No. 23-cv-15683, Dkt. No. 62-1, at 82:14-19.) Before selecting another inmate to hold his funds, Plaintiff would ask the detainee if he had any lawsuits. (*Id.* at ¶ 23.) After selecting an inmate, he would instruct his relatives to send money to that detainee's account. (*Id.* at ¶ 24.) Plaintiff would then buy commissary items through the detainee sheltering his funds. (*Id.* at ¶ 25.) Plaintiff did this multiple times with multiple detainees. (*Id.* at ¶¶ 26-27.)

Turning to the substance of Plaintiff's complaint, Plaintiff alleged that his toilet leaked occasionally for two weeks. (*Id.* at ¶ 28.) The sink did not supply cold water, and the hot water worked irregularly. (*Id.* at ¶¶ 29-30.) Plaintiff waited about two weeks to grieve his living conditions. (*Id.* at ¶ 31.) He submitted one grievance on March 14, 2023 about his malfunctioning cell plumbing. (*Id.* at ¶¶ 32-33.)

Plaintiff's grievance reported that the sink and toilet in his cell had not been working for the last fourteen to fifteen days. (*Id.* at ¶¶ 34-35.) The toilet leaked sometimes, the cold water did not work at all, and the hot water worked "whenever it want[ed] to work." (*Id.* at ¶¶ 36-37.) The grievance stated that Plaintiff asked multiple correctional officers to put in work orders to fix the problem. (*Id.* ¶ 38.) Plaintiff identified Deputy Sheriff Ramos-Saldana as the last officer he had asked to enter a work order for his cell plumbing. (*Id.* at ¶ 39.) Plaintiff's grievance reported that

Ramos-Saldana told him that he would put in a work order and accused Ramos-Saldana of failing to do so. (*Id.* at ¶¶ 40-41.)

Plaintiff lived with the plumbing problems for about 14 days before he reported the problems to Deputy Sheriff Ramos-Saldana. (*Id.* at ¶ 42.) He told Ramos-Saldana about the malfunctioning plumbing around the time he submitted the grievance. (*Id.* at ¶ 43.) This was the only time Plaintiff told Ramos-Saldana about his plumbing. (*Id.* at ¶ 44.) Plaintiff told Ramos-Saldana that his sink was "messed up" and that his cell plumbing fixtures were not "flushable." (*Id.* at ¶¶ 45-46; *see also* Pl.'s Dep., Dkt. No. 62-14, at 72:21-73:2, in which Plaintiff testified that he told Defendant that "we didn't have a functioning toilet or a sink, and we needed someone to put in a work order for us, and that nothing was being done.").

Plaintiff was in the dayroom, not his cell, when he had this conversation with Deputy Sheriff Ramos-Saldana. (*Id.* at ¶¶ 47-48.) According to Ramos-Saldana, Plaintiff did not describe his cell conditions to Ramos-Saldana the way his complaint describes those conditions. (*Id.* at ¶ 49.) Specifically, Plaintiff did not tell Ramos-Saldana that his toilet flooded; that his toilet leaked or his sink would not work; that he lacked access to the toilet or sink; or that his cell conditions were unsanitary or that he was exposed to human waste. (*Id.* at ¶¶ 50-57.) Plaintiff did not tell Ramos-Saldana that he had to clean his cell because of malfunctioning plumbing fixtures or that he lacked drinking water or water for hygiene purposes. (*Id.* at ¶¶ 58-60.)

Ramos-Saldana never observed Plaintiff's toilet flooding, leaking, or not flushing. (*Id.* at ¶¶ 61-63.) He never saw the sink not working. (*Id.* at ¶ 64.) He never observed human waste in Plaintiff's cell, flooding in the cell, or Plaintiff cleaning the cell due to malfunctioning plumbing. (*Id.* at ¶¶ 65-67.)

6

If a detainee reports a problem with his cell living conditions, Ramos-Saldana always enters a work order to initiate repairs. (*Id.* at ¶ 68.) He could enter work orders for repairs by telephoning the Department of Facilities Management ("DFM"). (*Id.* at ¶ 69.) Ramos-Saldana cannot control the professional judgment of DFM employees, how they prioritize repairs, or when or how they make repairs. (*Id.* at ¶¶ 70-73.)

Ramos-Saldana attests that he has never refused a detainee's request to enter a work order. (*Id.* at ¶ 74.) Plaintiff's lawsuits have never influenced Ramos-Saldana's job performance. (*Id.* at ¶ 75.) Ramos-Saldana has never done anything to retaliate against Plaintiff for anything. (*Id.* at ¶ 76.) Ramos-Saldana did not refuse to enter a work order to repair Plaintiff's plumbing. (*Id.* at ¶ 77.) Someone came to repair Plaintiff's plumbing after Plaintiff told Ramos-Saldana about the problem.[4] (*Id.* at ¶ 78.)

Plaintiff's living conditions did not cause him to seek medical care or cause him physical injuries. (*Id.* at ¶¶ 79-80.)

In his response to Ramos-Saldana's Declaration, Plaintiff admits that he never told the officer that he lacked access to a toilet, that his sink did not supply hot or cold water, that his cell conditions were unsanitary, or that he was exposed to human waste. (*See* Dkt. No. 67 at pg. 1.) He further admits that he never told Ramos-Saldana that he had to clean his cell because of the malfunctioning plumbing, that he lacked access to enough drinking water, or that he lacked access to enough water for personal hygiene. (*See id.* at pgs. 1-2.) Plaintiff does state that Ramos-Saldana looked into his cell. (*See id.* at pg. 1.) Nonetheless, Plaintiff agrees that Ramos-

---

[4] It is not clear when this occurred in relation to Plaintiff's complaint to Ramos-Saldana. In response to requests to admit, Plaintiff admitted that someone came to repair the plumbing after he spoke with Defendant but said that it "took 3 weeks" and the plumber did not fix "everything wrong" with the plumbing. (*See* Pl.'s Resp. to Def.'s Requests to Admit, Dkt No. 62-17, at ¶¶ 11-12.) It is not clear if Plaintiff means three weeks from when the problem started, or about a week after he complained to Ramos-Saldana. His complaint alleges that workers came to fix the sink on March 21, 2023, but the toilet remained broken. (*See* Pl.'s Compl., Dkt. No. 8, at pg. 15.)

Saldana did not observe the toilet flooding, leaking, or not flushing, the sink not working, human waste in the cell, or Plaintiff cleaning the cell due to these issues. (*Id.* at pg. 2.)

In regard to the work order, the most Plaintiff can say is that he did not see Ramos-Saldana "get on the telephone" to enter a work order for his cell. (*Id.*) He admits, however, that Ramos-Saldana cannot control when or how the DFM makes or prioritizes repairs. (*Id.*) Even so, Plaintiff says that Ramos-Saldana told him that if he wasn't "putting lawsuits on people," maybe his sink would be fixed. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once he has done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court must construe all facts in the light most favorable to Plaintiff, the non-moving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the

weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

## **ANALYSIS**

Defendant argues that he is entitled to summary judgment for three reasons: (1) Plaintiff did not exhaust his administrative remedies because his description of his living conditions in the complaint differs from that in the grievance and because the grievance does not mention retaliation; (2) Plaintiff has not produced evidence that Deputy Sheriff Ramos-Saldana acted in an objectively unreasonable manner; and (3) Plaintiff intentionally diverted assets to avoid paying the filing fees for his cases.

### A. Exhaustion

Defendant argues that the grievance only alleged that Plaintiff had spent the previous two weeks in a cell with a toilet that leaked occasionally and a sink that worked intermittently. (*See* Pl.'s March 14, 2023, Grievance, Dkt. No. 62-15.) Plaintiff stated in the grievance that he asked multiple correctional officers to put in work orders, with "C/O Ramos" being the last one. (*Id.*) He alleged that "C/O Ramos" told him that he would put in a work order but did not. (*Id.*) The grievance does not mention retaliation or any comment by Deputy Sheriff Ramos-Saldana similar to what Plaintiff now alleges, that Defendant told him that if he was not "putting lawsuits on people," the sink might have been fixed. (*Id.*)

The Prison Litigation Reform Act ("PLRA") requires an inmate who brings a civil rights complaint to first exhaust his available administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); *see*, *e.g.*, *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022); *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). This requirement is mandatory; if raised by the government, then "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policies. *Crouch*, 27 F.4th at 1320; *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Because failure to exhaust is an affirmative defense, the burden is on the defendant to prove that the plaintiff failed to exhaust an available administrative remedy. *Crouch*, 27 F. 4th at 1320; *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

Defendant essentially contends that there was such a "mismatch" between the grievance and the complaint that it failed to exhaust Plaintiff's administrative remedies. Defendant points out that the grievance did not mention retaliation. Defendant further argues that the grievance "[did] not truly alert the jail to the severity of the problem" because it did not include the details that Plaintiff alleged in his complaint describing the toilet as leaking "none stop" [sic] and alleging that he and his cellmate were exposed to unsanitary conditions because they had to clean up leaking water from the toilet every day. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J., Dkt. No. 61, at pg. 17; *compare* Pl.'s March 14, 2023, Grievance, Dkt. No. 62-15, *with* Pl.'s Compl., Dkt. No. 8.)

Defendant relies on *Bowers v. Dart*, 1 F.4th 513, 517–18 (7th Cir. 2021), a failure-to-protect case, where the plaintiff alleged in his grievance that a correctional officer ignored him *during* an attack, but alleged in his complaint that numerous jail employees knew of the risk and

10

failed to protect him from the attack *before* it occurred. The district court found that the plaintiff had failed to exhaust his administrative remedies as to the failure-to-protect claim. *Id.* Affirming, the Seventh Circuit observed that "federal courts lack discretion to consider a claim that has not traveled the required administrative path." *Id.* at 518 (citing *Ross*, 578 U.S. at 639). Because a claim that an officer did not come to an inmate's aid during the incident is not the same as a claim that officers were aware of the risk of attack but ignored it, the claim was properly dismissed. *Id.; see Ortiz v. Jefferson,* No. 1:20-CV-01033, 2023 WL 2711565, at *4 (N.D. Ill. Mar. 30, 2023) (Chang, J.) (applying *Bowers* to find an inmate had failed to exhaust his claims where there was a "stark" contrast between the facts alleged in the complaint and the contents of the grievance, such that it was insufficient to alert jail officials to the nature of the wrong).

    As to Plaintiff's conditions-of-confinement claim, the Court disagrees that the grievance was insufficient because it did not provide all the details alleged in the complaint. The PLRA does not specify how detailed a grievance must be to exhaust administrative remedies, *see Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020), and Defendant does not point to any facility grievance procedures with which Plaintiff failed to comply in terms of the level of detail he provided. A grievance generally is sufficient "if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" *Id.* (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)); *see Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (grievance serves its function if it gives correctional officials a "fair opportunity" to address complaint). Importantly, there is no "enhanced pleading requirement" for grievances, nor is there a requirement that the grievance's wording "match that of the complaint." *Wilson v. Holloway*, No. 19 C 8114, 2022 WL 444113, at *2 (N.D. Ill. Feb. 14, 2022) (Kennelly, J.). Plaintiff's grievance was sufficient to

11

alert jail officials that his toilet and sink were malfunctioning. Nothing more is required. Therefore, this claim was properly exhausted.

As to the retaliation claim, however, Plaintiff did not include any information in the grievance indicating that Ramos-Saldana's alleged failure to act was in retaliation because of Plaintiff's prior lawsuits. A prisoner need not articulate a specific legal theory in order to exhaust his claims. *Strong,* 297 F.3d at 650; *see also Hale v. Bureau of Prisons*, No. 23-cv-1296, 2024 WL 1701853, at *3 (S.D. Ill. Apr. 19, 2024) (Dugan, J.) (collecting cases). But the PLRA requires inmates to provide correctional officials with notice of a problem so they have a chance to correct it. *Price v. Friedrich*, 816 F. App'x. 8, 10 (7th Cir. 2020) (affirming district court's ruling that a prisoner had failed to exhaust as to a retaliation claim when he did not identify the issue in any of his underlying grievances) (unpublished) (citing *Schillinger*, 954 F.3d at 995–96).

In this case, Plaintiff alleged in his complaint that Ramos-Saldana told him, "[Y]ou shouldn't be putting lawsuits on people[.] [M]aybe you're [sic] sink and toilet would have been fixed by now." (*See* Pl.'s Compl., Dkt. No. 8, at pg. 14.) He further alleged that "CCDOC" had been "picking on me on purpose" because he had filed past lawsuits. (*See id*.) But there is nothing in the grievance to alert jail officials to his contention that the failure to fix Plaintiff's sink and toilet was linked to his previous litigation against correctional officials. In short, the retaliation claim relies on distinct facts that were not presented to jail officials through the grievance process. Under such circumstances, the Court finds that Plaintiff failed to exhaust his administrative remedies as to this claim. Although such a dismissal would ordinarily be without prejudice, s*ee Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004), the Court additionally finds that dismissal of this case with prejudice is appropriate as a sanction for litigation misconduct for the reasons set forth below.

## B. Reasonableness of Defendant's Conduct

In regard to the merits of his conditions-of-confinement claim, because Plaintiff was a pretrial detainee at the relevant time, his claim is governed by the objective reasonableness standard found in the Due Process Clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019). This standard requires the plaintiff to bring forth evidence that: (1) the conditions in question were objectively serious; (2) the defendant acted "purposefully, knowingly, or recklessly with respect to the consequences of his actions"; and (3) the defendant's actions were "objectively unreasonable—that is, 'not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose.'" *Hardeman*, 933 F.3d at 827 (Sykes, J., concurring) (quoting *Kingsley*, 576 U.S. at 398).

In regard to the first prong, "[a]n adverse condition amounts to a constitutional deprivation when it results in the denial of a basic human need." *Smith v. Dart*, 803 F.3d 304, 309–10 (7th Cir. 2015). This includes sanitation, hygiene, and adequate toilet facilities. *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013); *see Hardeman*, 933 F.3d at 820–21, 823 (basic necessities include sufficient water for drinking and sanitation and an environment free of accumulated human waste).

In regard to the state of mind component: plaintiff must bring forth evidence that (1) the defendant made an intentional decision with respect to his conditions of confinement; and (2) that the defendant acted in an objectively unreasonable manner by failing to mitigate the risk posed by those conditions. *Pittman by & through Hamilton v. Madison Cnty., Ill.*, 108 F.4th 561, 564 (7th Cir. 2024). In regard to the reasonableness of Defendant's actions, Plaintiff must bring forth evidence that Ramos-Saldana did not take "reasonable available measures to abate the risk

13

of serious harm to [Plaintiff], even though *reasonable officers under the circumstances would have understood the high degree of risk involved*, making the consequences of [his] conduct obvious." *Id.* at 572 (emphasis in original).

Plaintiff described the toilet overflowing each day during the two-week period alleged in his complaint, forcing him and his cellmate to clean up water and human waste from the floor of the cell. (*See* Pl.'s Dep., Dkt. No. 62-14, at 62:5-24.) He stated that the sink was not working during this time, and it "was hard to get water." (*Id.* at 62:12-14.) Plaintiff further testified that he was not given supplies to clean up the mess in the cell, although he asked non-Defendant officers for cleaning supplies. (*Id.* at 71:9-19.) Defendant does not dispute that this potentially amounts to an objectively serious deprivation.

Instead, Defendant argues that Plaintiff has failed to produce evidence that Ramos-Saldana failed to remedy the plumbing problems or acted unreasonably under the circumstances. Defendant also argues that Plaintiff's verbal complaint did not include sufficient information to put him on notice of unconstitutional living conditions.

In an oddly worded declaration, Deputy Sheriff Ramos-Saldana states in some detail that Plaintiff never told him about the severity of his cell plumbing problem, and that he never personally observed the problem. (*See* Def.'s Decl., Dkt. No. 62-18, at ¶¶ 1-20.) He then states that he always enters a work order to initiate repairs when a detainee reports a problem with his cell living conditions and does so by telephone. (*Id.* at ¶¶ 20-21.) But he does not state that he entered a work order in response to Plaintiff's complaint, and Defendant presents no documentation of a work order (telephonic or otherwise) by Defendant. The Court therefore cannot find on this record that Ramos-Saldana responded reasonably to Plaintiff's complaint.

14

Defendant contends that he had too little information to be on notice of any unconstitutional living condition. But Plaintiff testified that he told Ramos-Saldana that he did not have a functioning toilet or sink, that he needed someone to put in a work order, and that nothing was being done about the problem. (*See* Pl.'s Dep., Dkt. No. 62-14, at 72:21-73:2.) Defendant does not provide any case law specifying how detailed an inmate's complaint must be to put a reasonable officer on notice of a serious risk of harm. A complaint about a non-functioning sink and toilet about which nothing had been done arguably is sufficient. The Court finds there are questions of fact as to whether a reasonable officer would have been on notice of an objectively serious deprivation, and if so, whether Defendant responded reasonably under the circumstances. The Court therefore finds that Defendant did not show that summary judgment in his favor is warranted on this issue.

### C. Litigation Misconduct

Courts have inherent authority to sanction litigants who willfully abuse the judicial process and conduct litigation in bad faith. *Ebmeyer v. Brock*, 11 F.4th 537, 546 (7th Cir. 2021). "Proceeding *in forma pauperis* is a privilege," not a right. *Lofton v. SP Plus Corp.*, 578 F. App'x. 603, 604 (7th Cir. 2014) (unpublished); *see also Campbell v. Clark*, 481 F.3d 967, 969 (7th Cir. 2007) ("Section 1915 allows, but does not compel, courts to permit destitute plaintiffs to proceed without prepayment of fees."). Intentional concealment of assets in order to defraud the Court may justify dismissal with prejudice. *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002). Any sanction must be proportionate to the circumstances. *Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997). Plaintiff having been given an opportunity to respond in writing to the sanctions motion, the Court determines that a live hearing is not necessary. *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022); *see*

*Aguilar v. Goldberg*, 770 F. App'x. 293, 294–95 (7th Cir. 2019) (unpublished) (no hearing necessary where record supported a finding of intentional misconduct).

The PLRA requires all inmates to pay the filing fee. *See* 28 U.S.C. § 1915(b)(1). The fee cannot be waived. *Butler v. Deal*, 794 F. App'x 542, 544 (7th Cir. 2020) (unpublished) (explaining that PLRA "forbids outright forgiveness of the obligation to pay the filing fee"). When an inmate is permitted to proceed *in forma pauperis*, the plaintiff is assessed an initial partial filing fee and subsequently required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner is directed to forward payments to the Clerk of Court each time the amount in the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(1)-(2). These payment obligations were spelled out in each order issued by the Court granting Plaintiff leave to proceed *in forma pauperis*. (*See*, *e.g.*, 07/17/23 Order, Dkt. No. 7.)

Plaintiff states in response to Defendant's motion that the accusation that he tried to avoid paying his filing fees while at the Cook County Jail "is a lie." (*See* Pl.'s Resp., Dkt. No. 67, at pg. 3.) But Plaintiff's deposition testimony establishes that he directed funds to other inmates' accounts multiple times to avoid paying for the lawsuits he filed. (*See* Pl.'s Dep. in Case No. 23-cv-15683, Dkt. No. 62-1, at 82:5-12; 85:8-10.) Plaintiff cannot now contradict his sworn deposition testimony unless he offers a plausible explanation for the discrepancy, which he has not done. *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 406 (7th Cir. 2022) (citing *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002)).

Transactions posted to Plaintiff's trust fund accounts at the Cook County Jail, and subsequently in the Illinois Department of Corrections, support a conclusion that he intentionally diverted funds from his trust fund account to avoid paying filing fees.

16

A review of the trust fund account statement attached to Defendant's motion for summary judgment indicates that Plaintiff received a $60 deposit on Aug. 1, 2022.[5] Jail officials deducted $48 of the $60 deposit to pay for Plaintiff's filing fees in four cases. (*See* Dkt. No. 62-2 at pg. 2.) Plaintiff received no further deposits for more than a year until receiving a $50 deposit on Dec. 28, 2023. (*See id.*)

Plaintiff was transferred to the custody of the Illinois Department of Corrections (IDOC) in January 2024. Defendants did not provide a copy of Plaintiff's prison trust fund statement, but court staff was able to obtain a copy from Illinois River Correctional Center. *See Robertson v. French*, 949 F.3d 347, 353–54 (7th Cir. 2020) (courts can, in an oversight role, monitor a prisoner's finances "to ensure that the prisoner does not deplete his trust account in order to avoid paying the filing fee."). Plaintiff's IDOC account statement shows that he received $1,445.47 in deposits to his prison trust fund account between Jan. 1, 2024, and April 9, 2025. He received a $300.00 deposit on Feb. 1, 2024, about a month after he entered state custody, and continued to receive regular deposits to his account. No payments were collected toward Plaintiff's filing fees owed to this Court during that time.

It therefore appears that Plaintiff began diverting funds to other inmate's trust fund accounts sometime after Aug. 1, 2022, but stopped doing so after he left the Cook County Jail and was no longer subject to the 100 percent collection order.[6] Plaintiff insists he diverted "$5 a few times for my hygiene products I needed." (*See* Pl.'s Resp., Dkt. No. 67, at pg. 3.) But

---

[5] This was more than a year before the Court issued its 100 percent collection order in *Johnson v. Johnson, et al.*, No. 15-cv-15683, on Dec. 5, 2023, but Plaintiff was subject to individual collection orders for each of his cases filed to that point.

[6] The Court's standard order directs the trust fund officer at the facility where the plaintiff is housed to ensure that a copy of the order is mailed to each facility where the plaintiff is housed until the filing fee is paid. It is unclear why that order was not followed in this instance.

17

Plaintiff's explanation that he sent $5 to other detainees a few times for hygiene items does not explain or excuse his behavior.

First, Plaintiff's contention that the Court's collection orders prevented him from obtaining needed hygiene items is incorrect. The Cook County Jail is obligated to provide basic hygiene items for pretrial detainees, *Hughes v. Cook Cnty.*, No. 18 C 5582, 2020 WL 1288887, at *4 (N.D. Ill. Mar. 17, 2020) (Kendall, J.), and Plaintiff does not explain what hygiene items he needed but did not have. Second, Plaintiff was not entitled to divert assets to avoid collection of the filing fees even if he believed it was necessary to obtain hygiene items. *See Hughes v. Anderson*, 829 F. App'x. 724, 725–26 (7th Cir. 2020) (unpublished) (inmate who diverted assets, but claimed that it was to remain eligible for a jail program for indigent inmates, was obligated to disclose this to the court "before hiding assets so it could evaluate the legitimacy of the scheme"); *see also Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016) ("Hiding assets is not a permissible alternative to seeking the judge's assistance.").

Plaintiff's scheme to evade collection of his outstanding filing fees worked. Plaintiff has not paid anything toward the collection of his filing fee since Jan. 30, 2024, shortly after the $50.00 deposit from his cousin. While it appears that the Court's collection orders did not make their way to IDOC, Plaintiff received copies of each of this Court's collection orders, including the 100 percent collection order, and he knew that he was required to pay 20 percent of his income each month toward each filing fee he incurred. (*See* Pl.'s Dep. in Case No. 23-cv-15683, Dkt. No. 62-1, at 83:20-23.) Plaintiff admittedly took affirmative steps to evade collection of these fees while in the custody of the Cook County Jail. And he took no steps to pay the filing fees upon his transfer to state custody even though he is aware that he owes fees and should have been aware that payments were not being deducted from his trust fund account. "Prisoners, not

18

prison officials, bear ultimate responsibility for monitoring their prison accounts so that monthly payments are made when appropriate." *Campbell v. Nyklewick*, No. 05-C-481-C, 2006 WL 6087657, at *2 (W.D. Wis. May 9, 2006) (Crabb, J.) (citing *Lucien v. DeTella,* 141 F.3d 773, 776 (7th Cir. 1998) ("If in a given month the prison fails to make the required distribution from the trust account, the prisoner should notice this and refrain from spending the funds on personal items until they can be applied properly.")).

Plaintiff is no longer incarcerated, and as such is beyond the reach of the automatic collection provisions of the PLRA, 28 U.S.C. § 1915(b). *See* Ill. Dep't of Corrs., Individual in Custody Search, M19700—Johnson, Dominic, Offender Status: Parole, Parole Date: 05/23/2025, located at https://idoc.illinois.gov/offender/inmatesearch.html (last visited June 18, 2025). Plaintiff owes a total of $1,987.52 in filing fees as follows: Case No. 18-cv-8225 ($71.73); 19-cv-7631 ($148.52); 20-cv-2252 ($167.85); 21-cv-0432 ($199.86); 23-cv-1338 ($349.56); 23-cv-1339 ($350); 23-cv-15683 ($350), and this case, 23-cv-4064 ($350).

Plaintiff's scheme to evade collection of these filing fees is sanctionable. *See Hughes*, 829 F. App'x. at 726 (sanction warranted where plaintiff admitted diverting assets to get around filing fees). Given Plaintiff's intentional decision to divert funds from his custodial account at the Cook County Jail so that fees were not and could not be collected, the Court finds that dismissal with prejudice is warranted. The Court has considered whether a lesser sanction is appropriate, but given Plaintiff's deliberate and successful attempt to evade collection of the filing fees, along with the fact that automatic collection of the filing fees from Plaintiff's account is no longer an option, dismissal without prejudice or a monetary sanction would not be a sufficient deterrent. *See Donelson*, 931 F.3d at 570 ("Fines would be ineffective because [plaintiff] had filed this suit in forma pauperis; if he could not afford the filing fee, a monetary

19

sanction would not deter him."). Additionally, having deliberately evaded the filing fees for this case, Plaintiff "cannot expect favorable treatment on matters of discretion." *Campbell*, 481 F.3d at 969; *see also Moran v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000) ("Prisoners who play games to avoid the PLRA should not expect courts to cooperate."). For these reasons, this case is dismissed with prejudice as a sanction for Plaintiff's litigation misconduct.

## CONCLUSION

Defendants' motion for summary judgment [60] is granted to the extent that this case is dismissed with prejudice as a sanction for Plaintiff's litigation misconduct. The Court notes, in the alternative, that dismissal of Plaintiff's retaliation claim is warranted because Plaintiff failed to exhaust his administrative remedies as to that claim. The Clerk is directed to enter final judgment and send a copy of this order to Plaintiff at his last-known address, as reflected on the docket. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1).

Dated: July 11, 2025

MARY M. ROWLAND
United States District Judge